By the Court.
Woodruff, J.
—The subject of the insurance in question was a new vessel, lying on the stocks at St. Luce, on the River St. Lawrence, about to be launched. The object of the contract was' to insure her while being safely launched. This plainly appears upon the face of the policies, and is not denied by the counsel for the defendants.
It is obvious that in making this insurance the defendants have used a form of policy, in most of its provisions, suited to an insurance upon a sea-going vessel, and doubtless a form in use by them for such insurances. They have, however, in describing the period of insurance, made it expressly applicable to the vessel while being launched. While, then, there are numerous provisions in the policies which from the nature of the *197 case can have no application to a vessel while undergoing that process and which it is unnecessary to notice; they have adopted some which are, in their terms, suited to the special nature of the risk insured against. And in giving a construction to the contract we are bound to look at the object which the parties had in view and to give effect to the terms employed, so far as they can be sensibly applied to such an insurance.
This view of the subject enables us, and indeed requires us, to say that the contract reasonably and plainly imports that the defendants insured the vessel while being launched, and until she be moored twenty-four hours in' safety, immediately after such launching, and that such insurance was against the perils attending such launching and until so moored; which are, we think, sufficiently described by the terms “and all other sea-perils, losses and misfortunes that shall come to the hurt, detriment or damage of the said vessel or any part thereof."
To say (as was argued before us), that the terms “ losses and misfortunes ” is to have no meaning other than the same terms would have when applied to a vessel on a voyage at sea would be to lose sight of the special nature of the insurance and its expressed application to a vessel while being launched, and practically to hold that the policy had no effect until after the launching was effected.
We think that it is our duty to give these terms and these policies an application and a signification appropriate to the manifest design of the insurance, and that the vessel was, therefore, covered , by the policies from the moment the launching commenced; and was protected against accidents in the progress of that work, which might happen to the vessel to her hurt or damage, provided (according to the terms of the exception) such hurt or damage did not arise from the negligence, fraud, ignorance or misconduct of those in charge of the vessel.
It is not necessary to the plaintiff’s case, under this construction of the policies, to say that by such a policy the expenses of launching the vessel, or any of them, whether ordinary or extraordinary, are the subject of indemnity. It may, perhaps, be truly said that the defendants neither expressly nor impliedly undertook that the vessel should be launched without difficulty, or that the owners should have the ordinary or average success *198 in their endeavors, or that the vessel should be launched by the first or the second or any particular number of efforts, or that when she began to move on her ways she should not stop, or if she did that the owners should - be indemnified for any expense, whether great or small, in completing the work. And it may be that if the owner’s endeavors to launch the vessel had been wholly unsuccessful, and she had never (notwithstanding the largest expenditure and their utmost endeavors) reached .the water, the defendants would not have been liable for anything, provided, and so long as the vessel remained in safety and in no ' danger of injury.
It is, however, plain, we think, that if in the process, and without negligence, fraud, ignorance or misconduct, the vessel did sustain injury, whether before the vessel reached the water or after she was partially afloat, the insurers were liable.
Indeed, if a narrower construction were given to the policy in respect of the perils insured against, and we were to hold that under the words “ sea-perils, losses and misfortunes that shall come,” &c., no danger was insured against, and no damage provided for, except such as arose from the action of the waters into which she was to be launched; we must still say that for such injury as was caused by the action of those waters while partially floated, and “ while being launched,” the insurers were hable.
This view of the contract leaves little room for further discussion. Although it is stated in the protest that the vessel strained, it does not clearly appear that the vessel suffered any actual injury, and if, in all cases, it were essential that actual damage should come to a vessel before the insured could recover anything, there would here be no title in the plaintiff to recover. But it is a familiar principle that when a peril insured against is actually encountered, and while in the “jaws of the peril” sacrifices are made, and expenses are incurred to avert the impending danger and save the ship, those sacrifices and those expenses are covered by the insurance, although they may avail to deliver the ship in perfect safety and without the slightest injury to herself. The whole -doctrine of the liability of insurers for general average charges,, proceeds upon this principle; and that liability is in no wise impaired by the fact that such sacrifices *199 and expenses prove sufficient to save the vessel from any injury greater or less, so that she be not, in fact, lost. Indeed, the contract of the insurer is to indemnify against losses by the peril insured against, and not simply and merely against losses by actual-injury to the subject of the insurance by that peril.
It appears then by the protest in evidence that in the process of launching the insured vessel came to a situation, in no wise owing to or occasioned by the mismanagement or neglect of the persons having charge of the work or any of them, and notwithstanding their utmost endeavors and exertions to preserve her from loss or danger, in which situation she was in a most critical and dangerous position, her stern floated and she strained, and was in imminent danger of becoming hogged. To say that the insurance did not protect her in such a situation, and provide for whatever sacrifices were necessary to effect her deliverance from the actual danger of being injured, would be to hold that the policies were little better than waste paper, and that the parties were acting under a delusion when they entered into the contract.
On this subject we cannot hesitate. The expenses which were -necessarily incurred in the mere preservation of the ship from actual injury from the danger then impending were we think covered, as plainly as the expenses of getting a vessel off the rocks would be under an ordinary policy, if she were driven thereon by a storm at sea. And that the circumstance that she was delivered from her situation without being in fact injured would no more affect the right of recovery in the one case than the other.
What items of expense incurred by the owners and embraced in the recovery herein, were to be deemed a part of the expense of launching (if any), and whether the recovery embraces any charges which were not strictly necessary for the preservation of the vessel from injury, we cannot inquire. In the form in which the case is presented, by stipulation between the parties, we have only to say whether the policies cover any of the damage caused or 'expenses incurred by reason of any of the facts stated in the protest? If they do we are therefore to assume that the expenses have been properly adjusted."
The vessel was in a most critical and dangerous position; her *200 stem floated and she strained, and was in imminent danger of becoming hogged. The utmost endeavors and exertions were employed to preserve her; means specified in the protest were resorted to for that purpose; although we cannot determine by the protest alone, how much expense this involved, we must necessarily say that for the expense which was necessary and solely incurred for the preservation of the vessel, the insurers are liable.
If any portion of the expenses incurred were such as were necessary to complete the work of launching and would have been equally necessary had the vessel been in no danger when she stopped on her ways, the manner in which the case comes before us will not permit us to detect it. We must assume that on the trial proper discrimination was made, and our duty is performed by an affirmative answer to the question submitted to our consideration.
The judgments must be affirmed, with costs.
Ordered accordingly.